## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORGE L. CONCEPCION,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-3434** |
| | : | |
| **KIRSTEN KINCH,** *et al.,* | : | |
| **Defendants.** | : | |

### MEMORANDUM

**BAYLSON, J.**                                               **JANUARY  11, 2022**

Currently before the Court is an Amended Complaint filed by Plaintiff Jorge L. Concepcion asserting claims pursuant to 42 U.S.C. § 1983 based on allegations that the Defendants harassed him, threatened him, and retaliated against him by having his probation revoked while he was living at a halfway house.  (ECF No. 14.)  For the following reasons, the Court will dismiss Concepcion's Amended Complaint.

## I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

The events giving rise to Concepcion's claims occurred at Keenan House, a halfway house where he previously resided in connection with the terms of a sentence of probation.[1] Concepcion filed his initial Complaint against two employees of Keenan House, "Kirsten K."

---

[1] Public records reflect that on February 25, 2021, Concepcion pled guilty to manufacture, delivery or possession with intent to manufacture and deliver.  *Commonwealth v. Concepcion*, CP-39-CR-0003331-2020 (Lehigh C.P.).  On April 14, 2021 he was sentenced to "4 years probation with 22 months on TCAP."  *Id.*  TCAP is the Treatment Continuum Alternative Program, "a drug and alcohol treatment-based intermediate punishment program." *Commonwealth v. Yenser*, No. 354 EDA 2013, 2013 WL 11248431, at *1 (Pa. Super. Ct. Dec. 16, 2013).  It appears Concepcion was transferred from Lehigh County Jail to Keenan House to serve his sentence.

and "Tonya B." who was identified as the "Clinical Director." (ECF No. 2 at 1-2.)[2] In an

October 6, 2021 Memorandum and Order, the Court granted Concepcion leave to proceed *in*

*forma pauperis* and dismissed Concepcion's Complaint without prejudice to him filing an

amended complaint. *Concepcion v. Tonya B.*, Civ. A. No. 21-3434, 2021 WL 4592161, at *1

(E.D. Pa. Oct. 6, 2021). The Court understood "Concepcion to be raising federal claims,

pursuant to 42 U.S.C. § 1983, for violation of his constitutional rights based on Kirsten and

Tonya's alleged interference with his mail and his ability to contact his attorney and the courts,

as well as the harassment he claims to have endured at Keenan House." *Id.* However, he failed

to state a plausible basis for a claim under § 1983 because the complaint was "devoid of

allegations from which the Court could conclude that the Defendants, who are employees

at Keenan House, were state actors." *Id.* at *3. Concepcion's allegations that he "was

'mandated' to reside at Keenan House for drug rehabilitation and that if he had been kicked out

of Keenan House he would be sent back to jail" were insufficient to establish that Keenan House

employees were state actors for purposes of § 1983.

After having been granted two extensions of time, (ECF Nos. 11 & 13), Concepcion filed

his Amended Complaint. The Amended Complaint names as Defendants employees of Keenan

House Kirsten Kinch and Tonya Schafer; Brandy Beck, Concepcion's probation officer; and

"Mark Doe." (ECF No. 14 at 1-2.) Concepcion's allegations again concern how he was treated

at Keenan House, where he resided between May and August of 2021, and the ultimate

revocation of his probation. (*Id.* at 3.) He alleges that in May and June of 2021 he witnessed

Kinch, his "counselor" at Keenan House, "engaged in inappropriate sexual behavior." (*Id.* at 5.)

Kinch allegedly told Concepcion that if he reported what he witnessed, she would deny it, "have

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

[him] disciplined" and have Beck, his probation officer, "violate [his] probation and have [him] sent back to prison." (*Id.*) Concepcion also alleges that Kinch "fabricated malicious lies" about him and "held [him] against [his] will in an office." (*Id.*) Kinch and Shaffer also allegedly prevented Concepcion from using the phone to contact his attorney based on concerns that he would sue Keenan House. (*Id.*)

Kinch allegedly contacted Beck to communicate "lies about [Concepcion's] character." (*Id.*) Schaffer also allegedly fabricated lies about him, although Concepcion does not elaborate on the content of any of these communications. (*Id.* at 7.) According to Concepcion, Kinch and Beck "set out to intimidate and instill fear in [him] by calling [him] in to an office room setting where [he] was cursed at, not allowed to leave the room, and where [Kinch and Beck] stood at the door to prevent [him] from walking out." (*Id.* at 5.) Both women allegedly threatened to testify against him "if he reported the events that [he] witnessed." (*Id.*) Beck also allegedly stated at one point that she would "have [Concepcion] locked up."[3] (*Id.* at 8.) Concepcion similarly alleges that Kinch and Schafer "would order [him] into [Schafer's] office where they would not allow [him] to leave." (*Id.* at 7.) The Complaint suggests that Concepcion may have been confined in an office on more than one occasion, although it is unclear how often this occurred. On at least one occasion when Concepcion was allegedly held in an office, Beck stood at the door "with her hands on her Taser and gun" and "close[d] her hands around her gun" when denying Concepcion's request to leave the room. (*Id.* at 8.)

Defendant Doe is identified as a "former client" of Kinch and Beck. (*Id.* at 9.) Doe allegedly "threatened [Concepcion] with bodily harm and or threats of violence to deter [him]"

---

[3] It is unclear whether this allegation refers to the same occasion when Beck is alleged to have participated in locking Concepcion in an office.

from reporting Kinch.  (*Id.*)  Doe informed Concepcion that he was "good friends" with Beck and Kinch and that there would be "certain consequences" if anything happened to Kinch.  (*Id.*)  Doe allegedly threatened Concepcion again on August 27, 2021, causing Concepcion to file a police report.[4]  (*Id.*)  Concepcion claims that Doe again threatened him if he did not withdraw the complaint.  (*Id.*)  The police report identifies Doe as a "staff member" at the "treatment house," and states that Concepcion "made complaints about Mark and while he was is [sic] the hospital Concepcion was receiving text messages from other patients stating that Mark was saying he was going to beat him up."  (*Id.* at 13.)  Another exhibit similarly describes Mark as a "staff member" at Keenan House.  (*Id.* at 14.)

Also on August 27, 2021, Beck charged Concepcion with violating his probation, causing him to be incarcerated.[5]  (*Id.* at 8.)  According to Concepcion, these actions were taken because he filed a police report against Doe and because he refused to withdraw both that report and an unspecified "civil complaint" he filed.  (*Id.* at 5.)  Concepcion also alleges that Beck sought to protect Kinch from the consequences of her own actions.  (*Id.* at 8.)

Concepcion claims that all four Defendants engaged in "harassment, intimidation and threats" against him, (*id.* at 5), and "conspired" to have him "locked up."  (*Id.* at 9.)  He raises claims against the Defendants pursuant to 42 U.S.C. § 1983, for violation of his constitutional rights.  (*Id.* at 2.)  Concepcion seeks damages for "mental anguish," "pain and suffering," and to

---

[4] The police report is dated August 28, 2021.  (ECF No. 14 at 13.)

[5] Public records indicate that the probation violation charge has not yet been resolved. *Commonwealth v. Concepcion*, CP-39-CR-3331-2020 (Lehigh C.P.).  A hearing is currently scheduled for January 19, 2022.  *Id.*

compensate him for expenses he incurred as a result of the Defendants' actions.[6]  (*Id.* at 10.)  He also seeks punitive damages.  (*Id.*)

## II.      STANDARD OF REVIEW

Since Concepcion is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Concepcion is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[6] Concepcion also seeks damages for "disability discrimination."  (ECF No. 14 at 10.)  Although he indicated that he suffers from anxiety and post-traumatic stress disorder, (*id.* at 7), he has not alleged a basis for a plausible claim that he was discriminated against based on those conditions.  Accordingly, in the event he was attempting to raise such a claim, it is dismissed.

### III.   DISCUSSION

#### A.  Lack of State Action

As with his initial Complaint, several of Concepcion's claims fail because he has not adequately alleged that the Defendants were acting under color of state law such that they are subject to liability under § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

Whether a defendant is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).  "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).  Rather, to support a finding of state action, "the government

must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

As explained in the Court's October 6, 2021 Memorandum, *Concepcion*, 2021 WL 4592161, at *3, the employees of Keenan House are not state actors solely by virtue of their employment at a facility that provided drug rehabilitation services to Conception. *See Daniels v. Nw. Hum. Servs*, No. 20-1736, 2021 WL 4166285, at *2 (3d Cir. Sept. 14, 2021) (*per curiam*) (affirming dismissal of lawsuit against residential rehabilitation center and its employees where plaintiff alleged only that "Douglas House is a community residential rehabilitation residence under operation of [Northwestern Human Services] who is from my knowledge integrated working with the City of Philadelphia and its prison institutions and the state as well.  People from the state jails are often sent to these [residential centers] for programs"); *Smith v. Alternative Counseling Servs.*, Civ. A. No. 21-0076, 2021 WL 492513, at *3 (E.D. Pa. Feb. 10, 2021) ("Based on the allegations of the Complaint, it appears that these Defendants – a privately run halfway house, its owner, and its employees – are not subject to liability under § 1983."); *Veeder v. TRI-CAP*, Civ. A. No. 17-11690, 2020 WL 1867212, at *5 (E.D. Mich. Jan. 30, 2020), *report and recommendation adopted*, 2020 WL 967481 (E.D. Mich. Feb. 28, 2020) ("'[C]ourts have consistently held that drug treatment facilities that treat individuals pursuant to a condition of parole are not performing a public function.'") (quoting *Porter v. Game*, Civ. A. No. 19-1408, 2020 WL 127580, at *2 (E.D.N.Y Jan 9, 2020)).  It appears that Concepcion may be attempting to allege that the employees of Keenan House should be considered state actors because they "conspired" with Beck, his probation officer. *See Adams v. Cty. of Erie, Pa.*, 558 F. App'x 199, 203 (3d Cir. 2014) ("[P]rivate individuals can act under color of state law for

purposes of § 1983 when they corruptly conspire with a state actor." (internal quotations omitted)).  To plausibly allege such a conspiracy, a plaintiff must provide factual allegations supporting an agreement and concerted action rather than relying on labels and conclusions. *Hoffman v. Cty. of Atl.*, Civ. A. No. 12-7018, 2014 WL 3573409, at *4 (D.N.J. July 18, 2014) (citing *Capogrosso v. The Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009)).

Most of the allegations in the Amended Complaint do not support a plausible basis for a conspiracy or joint action.  Liberally construing the Amended Complaint, the only joint action alleged between Keenan House employees and Beck, a state actor, relate to the occasion when Beck and Kinch allegedly confined Concepcion in an office.  Otherwise, Concepcion's allegations either do not allege joint action or rely solely on vague, undeveloped, conclusory allegations that are insufficient to plausibly allege state action.  *See Daniels*, 2021 WL 4166285, at *2 (3d Cir. Sept. 14, 2021) ("Daniels' allegations—including that the defendants' actions resulted in Daniels being made to appear in court and being placed into state custody—are insufficient to state that the defendants were 'willful participant[s] in joint action with the State or its agents.'"); *Albrecht v. Hamilton*, 233 F. App'x 122, 125 (3d Cir. 2007) (*per curiam*) (plaintiff failed to state a claim where "complaint contain[ed] only a general averment of conspiracy amounting to nothing more than a conclusion of law").  For instance, Concepcion has not adequately alleged that Kinch and Schafer's alleged refusal to permit him to make phone calls to his attorney, their "harassment" of him, or any of Schafer's conduct, is attributable to the Commonwealth.  Nor has he adequately alleged that Doe's threats to him are attributable to the Commonwealth.   Accordingly, the Court will dismiss these claims and address his remaining claims below.

**B.      Retaliatory Arrest and /or Prosecution**

The Court understands Concepcion to be alleging that Beck charged him with violating his probation to retaliate against him for filing a police report against Doe and because he refused to withdraw both that report and an unspecified "civil complaint" he filed.  (ECF No. 14 at 5.) "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out."  *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  "To plead retaliation for the exercise of First Amendment rights, a plaintiff must allege (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."  *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (internal quotations omitted).  In the context of a retaliatory prosecution claim, "a plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause."  *Reichle v. Howards*, 566 U.S. 658, 666 (2012) (citing *Hartman*, 547 U.S. 250)).  The same is generally true when a plaintiff claims retaliatory arrest.  *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1723-24 (2019).  In the probation context, only reasonable suspicion is required to support an arrest for violating the terms of probation.  *See generally Griffin v. Wisconsin*, 483 U.S. 868, 875-880 (1987); *see also Breslin v. Brainard*, Civ. A. No. 01-7269, 2003 WL 22133833, at *7 (E.D. Pa. Sept. 15, 2003).

Although Concepcion alleges that he was charged with violating his probation in retaliation for filing a police report against Doe and for refusing to withdraw that complaint and another complaint he filed,[7] he does not state the basis for the charge filed against him for

---

[7] The allegations relating to this second complaint are unclear.  Absent any details about the nature of this complaint and the basis for any retaliatory motive connected to it, any claims based on this complaint are far too vague to state a plausible claim.

violating his probation or allege that Beck lacked reasonable suspicion for that charge.  Absent

facts identifying the charge and explaining the absence of reasonable suspicion to support it,

Concepcion's allegations suggest only a possible, rather than a plausible, basis for a retaliation

claim based on the violation of his probation.  *See generally Iqbal*, 556 U.S. at 678 ("Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

line between possibility and plausibility of entitlement to relief."  (internal quotations omitted));

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not

nudged their claims across the line from conceivable to plausible, their complaint must be

dismissed.").  Accordingly, the Court will dismiss any claims based on the probation violation.[8]

### C.   Confinement to an Office

Concepcion also alleges that Kinch and Beck confined him in an office at Keenan House,

allegedly to deter him from reporting Kinch and that, when he sought to leave, Beck prevented

him from doing so by standing at the door with her hand on her gun and/or her taser, which were

on her hip.  "Inherent in the very nature of probation is that probationers do not enjoy the

absolute liberty to which every citizen is entitled."  *United States v. Knights*, 534 U.S. 112, 119,

(2001) (internal quotations omitted).  In that regard, individuals who are serving their sentences

in halfway houses generally remain under institutional confinement and may be properly

subjected to restrictions on their liberty.  *Asquith v. Dep't of Corr.*, 186 F.3d 407, 411 (3d Cir.

1999); *see also Griffin*, 483 U.S. at 874 ("To a greater or lesser degree, it is always true of

probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty

to which every citizen is entitled, but only . . . conditional liberty properly dependent on

---

[8] Even if any of the other Defendants could be considered to have acted jointly with Beck regarding the events leading to the probation violation, the claims against them would fail for the same reason.

observance of special [probation] restrictions.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972))).  In other words, depending on the terms and conditions of confinement at a halfway house, residents may subject to restrictions on their rights consistent with the Constitution.  *See, e.g.*, *United States v. Huart*, 735 F.3d 972, 975 (7th Cir. 2013) ("Although this court has not considered the appropriate level of privacy to be recognized for inmates of a halfway house, we have little difficulty concluding that Huart lacked both an objective and subjective expectation of privacy extending to either his phone or its contents."); *Page v. Warren*, 455 F. App'x 439, 441 (5th Cir. 2011) (*per curiam*) (affirming rejection of due process claims based on restrictions on plaintiff's movements while under mandatory supervision at a halfway house:  "Page points to no law creating a liberty interest in a gradual relaxation of the movement restrictions he agreed to at the beginning of his parole"); *Edwards v. Stephens*, Civ. A. No. 06-0878, 2006 WL 2349584, at *6 (W.D. La. July 12, 2006) (observing that the Supreme Court "has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment").

Concepcion has not plausibly alleged that a constitutional violation occurred.  Initially, it is unclear what restrictions were placed on Concepcion's liberty in connection with his sentence or in connection with the terms of his residency at Keenan House.  Although the content of the conversation described by Concepcion is troubling, it is unclear that Concepcion's probation officer and counselor would not be permitted to require him to remain present in an office for a discussion while serving his sentence at Keenan House or what constitutional right this would implicate, especially considering the limited due process, Fourth Amendment, or other rights in an institutional setting.  It is also unclear how long this event is alleged to have lasted and

whether other matters were discussed during this meeting that might affect the analysis. Accordingly, the Court will dismiss this claim as implausible.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Concepcion's Amended Complaint. Concepcion will be given one final opportunity to file an amended complaint in the event he can state a basis for a claim.  An appropriate Order follows.

**BY THE COURT:**

**/s/ MICHAEL M. BAYLSON**

_____

**MICHAEL M. BAYLSON, J.**