IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JORGE L. CONCEPCION,<br>    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 21-CV-3434 |
| | : | |
| KIRSTEN KINCH, BRANDY BECK,<br>JOHN E. DILLENSNYDER III,<br>TONYA SHAFFER, AND JOHN DOE,<br>    Defendants. | : | |

## MEMORANDUM

**BAYLSON, J.**                                                                                 **DECEMBER 16, 2022**

This case is about an alleged conspiracy to silence, intimidate, and retaliate against a parolee. Plaintiff was a patient at two alternative-to-prison drug treatment facilities. He alleges that his discovery of his counsellor's sexual engagements with other patients and staff led to harassment and intimidation by facility staff, including his probation officer. Plaintiff also alleges that these staff conspired to terminate his participation in the alternative-to-prison program, resulting in Plaintiff's return to prison on a parole violation charge.

Plaintiff seeks damages for the following counts:

I. **Civil Conspiracy** against all Defendants under § 1983;

II. **Retaliatory Arrest** against Defendant Beck under § 1983;

III. **Malicious Prosecution** against Defendant Beck under § 1983; and

IV. **Intentional Infliction of Emotional Distress** against all Defendants under Pennsylvania state law.

1

Counts I, II, and III relate to the termination of Plaintiff's participation in the treatment program that was a condition of his parole. Count IV relates to the pattern of harassment and intimidation with threat of imprisonment that Plaintiff allegedly experienced at both treatment centers.

Plaintiff's Third Amended Complaint – the first prepared with the help of counsel – resolves much of the previous lack of clarity regarding the facts alleged in this case. But several deficiencies remain. Counts I, II, and III must be dismissed in their entirety. Count IV must be dismissed with regards to Defendants Dillensnyder and Shaffer. However, the Court will allow one *final* opportunity to amend because this was Plaintiff's counsel's first bite at the apple.

**I.    ALLEGED FACTUAL BACKGROUND**

On April 14, 2021, Plaintiff was sentenced to 4 years of probation, including 22 months in the Treatment Continuum Alternative Program ("the Treatment Program"). Third Am. Compl. ¶ 13. The program is administered by Treatment Trends and includes in-patient treatment at two facilities known as Keenan House and the Halfway Home of Lehigh Valley. Id. Defendant Beck was Plaintiff's probation officer. Id. ¶ 15. Defendant Kinch was Plaintiff's counsellor at Keenan House. Id. § 18. Defendant Shaffer was a clinical director overseeing counselling at Keenan House. Id.

In May 2021, Plaintiff allegedly witnessed Counsellor Kinch engaging in sexual activities with residents and other staff. Id. ¶ 19. Counsellor Kinch became aware that Plaintiff had witnessed at least one of these incidents. Id. Counsellor Kinch threatened that if Plaintiff reported her behavior, she would instruct Officer Beck to charge him with a parole violation. Id. ¶ 21. Counsellor Kinch noted that she and Beck had a close friendship, and that Beck would

"have her back." Id.  Officer Beck began standing guard outside counselling sessions between Kinch and Plaintiff – a practice that was unique. Id. ¶ 22. On several occasions, Officer Beck and Counsellor Kinch confined Plaintiff to intimidate him and reinforce his silence. Id. ¶ 23. Officer Beck also threatened to "lock up" Plaintiff if he did not maintain his silence. Id. ¶ 25. Officer Beck, Counsellor Kinch, and Director Shaffer instructed the staff of Keenan House to restrict Plaintiff's phone access so that he could not contact an attorney or otherwise report the situation at Keenan House. Id. ¶ 26.

Plaintiff completed his residency at Keenan House on July 20, 2021 and was transferred to Halfway Home to continue the Treatment Program. Id. ¶ 27. Shortly after, Counsellor Kinch was transferred to Halfway Home to assume the position of clinical director. Id. ¶ 29. Upon now-Director Kinch's arrival, the threats against Plaintiff resumed. Id. ¶ 30. Defendant John Doe – an employee of Treatment Trends – threatened Plaintiff with bodily harm if he were to report Kinch.[1] Id. ¶ 31.

On July 30, 2021, Plaintiff filed the initial complaint in the instant action, alleging intimidation and harassment during his time at Keenan House. Id. ¶ 32. On August 26, 2021, Plaintiff also filed an administrative complaint with Magellan Behavioral Health of Pennsylvania, Inc., the managed care company associated with the Treatment Program. Id. ¶ 34. In response, the threats "escalated even further" Id. ¶ 26.

On August 28, 2021, Plaintiff experienced heart palpitations and called for an ambulance. Id. ¶ 37. He did not inform staff of his departure at the time. Id. ¶ 44. He was admitted to the

---

[1]  Defendant Doe has still not been named. Plaintiff has not explained why. While the Court will not dismiss this John Doe defendant today, Plaintiff must name this defendant if he wishes to proceed against him. Failure to name Defendant Doe without adequate justification will result in the dismissal of all charges against him.

hospital.  Id. ¶ 37.  At the hospital, Plaintiff called Halfway Home to provide his whereabouts. Id. ¶ 38.  Defendant Doe answered the phone and threatened him with physical harm if he did not withdraw both complaints.  Id.  Plaintiff also received text messages from other patients informing him that Doe was threatening to beat him up.  Id.  Plaintiff nevertheless filed a police report regarding his mistreatment over the preceding months.  Id. ¶ 39.  He told police that he did not feel safe returning to Halfway Home.  Id.  Nonetheless, Plaintiff returned to Halfway Home later that day.  Id. ¶ 41.

Three days later, on August 31, 2021, Plaintiff was called into a meeting by Defendant Dillensnyder – executive director of Treatment Trends – along with Plaintiff's counsellor at Halfway Home, and Doe.  Id. ¶ 42.  Officer Beck stood outside.  Id.  Plaintiff was told that he had violated the rules of the Treatment Program by calling an ambulance to take him to the hospital without signing out of the facility.  Id. ¶ 44.  Therefore, Plaintiff was discharged from the Treatment Program.  Id. ¶ 45.  After the meeting, Defendant Beck arrested Plaintiff, who was sent to Lehigh County Jail to await a preliminary probation revocation hearing.  Id. ¶ 48.

On September 7, 2021, Plaintiff was released on a $5,000 bond.  Id. ¶ 29.  Plaintiff asserts in his response to Defendant's motion that this probation revocation charge was dismissed.  Resp. at 12.  On January 19, 2022, Plaintiff was again arrested for violation of his parole.  Resp. Ex. A.  According to Plaintiff, this was for a failed drug test.  Resp. at 2.  His probation was revoked on January 26, 2022.  Third Am. Compl. ¶ 50.

## II.  PROCEDURAL POSTURE

Plaintiff filed the first complaint in the instant action *pro se* on July 30, 2021 (ECF 1). The Court dismissed the action without prejudice on October 6, 2021 (ECF 9).  Plaintiff filed an

amended complaint on December 27, 2021 (ECF 14).  This, too, was dismissed without prejudice on January 11, 2022 (ECF 16).  Plaintiff filed a Second Amended Complaint on March 4, 2022 (ECF 20).  After counsel was appointed, Plaintiff filed a Third Amended Complaint on June 30, 2022 (ECF 41).

Defendant Beck filed the instant motion to dismiss on July 28, 2022 (ECF 42).  Defendants Dillensnyder, Kirsch, and Schaffer filed a motion to dismiss on August 3, 2022 (which was not timely) (ECF 44).  Plaintiff filed a response to Defendant Beck's motion on August 11, 2022 (ECF 45) and to the other Defendants' motion on August 17, 2022 (ECF 48).

### III. LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff.  Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020).  To survive this motion, a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[ ] of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Twombly, 550 U.S. at 555).  To survive the motion, a plaintiff must "plead 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for misconduct alleged.'" Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009)).

## IV. DISCUSSION

For the reasons discussed below, the Court will grant the motion to dismiss without prejudice with regards to Counts I, II, and III. The Court will grant the motion to dismiss with prejudice with regards to Count IV, but only against Defendants Shaffer and Dillensnyder.

### A. Civil Conspiracy under § 1983 against All Defendants

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Employees of a facility providing drug rehabilitation services are not state actors. See Concepcion v. Kinch, No. 21-CV-3434, 2022 WL 103351 (E.D. Pa. Jan. 11, 2022). Nevertheless, private parties who conspire with a state official (here, Beck) act under color of law. Abbott v. Latshaw, 164 F.3d 141, 147–48 (3d Cir. 1998).

Plaintiff alleges that Beck "conspired with the other Defendants and arrested [Plaintiff] in retaliation for exercising his First Amendment right and maliciously prosecuted [Plaintiff] for alleged violations of his parole." Third Am. Compl. ¶ 53. But Plaintiff has not pled sufficient facts tying Beck to this conspiracy. Plaintiff alleges that Treatment Trends terminated him from their program – a treatment which was a condition of his parole. The facts alleged do not sufficiently tie Beck to that decision by Treatment Trends.[2] Instead, they suggest that Plaintiff's

---

[2]   Plaintiff alleges that Beck threatened to "lock Plaintiff up." Third Am. Compl. ¶ 25. But that is not enough to tie Beck to the decision made by Treatment Trends to terminate Plaintiff here. Nor is Beck's alleged involvement in wider patterns of intimidation and silencing evidence of her involvement in an alleged conspiracy to terminate Plaintiff from the program.

termination from the program may have violated the conditions of his parole.[3] Thus, Beck may necessarily have had reasonable suspicion to find that Plaintiff had violated his parole. Plaintiff cannot bring a conspiracy charge against Beck without alleging specific facts that either (1) Beck conspired with Treatment Trends to have Plaintiff terminated or (2) termination from the Treatment Trends program did not constitute a violation of the conditions of Plaintiff's parole.

Beck was the only state officer named in this case. Without her as a defendant, the conspiracy charge must be dismissed against all Defendants.[4]

### B.  Malicious Prosecution and Retaliatory Arrest under § 1983 against Defendant Beck

Both malicious prosecution and retaliatory arrest claims require an absence of probable cause. See Nieves v. Bartlett, 139 S. Ct. 1715, 1723-24 (2019) (false arrest); Hartman v. Moore, 547 U.S. 250, 265-66 (2006) (malicious prosecution). In the probation context, only reasonable suspicion is required to support an arrest for violating the terms of probation. See generally Griffin v. Wisconsin, 483 U.S. 868, 875-880 (1987); see also Breslin v. Brainard, Civ. A. No. 01-7269, 2003 WL 22133833, at *7 (E.D. Pa. Sept. 15, 2003).

Plaintiff argues that there was no reasonable suspicion because the rationale provided was clearly a pretext. Resp. 2. But reasonable suspicion is an objective inquiry that does not depend on a party's subjective intent. See Nieves, 139 S.Ct. at 1724-25. As discussed above, the facts alleged in the complaint suggest that Plaintiff's termination from the Treatment Program

---

[3]  This is not fully clear to the Court. But as the facts are presently alleged, the Court cannot infer otherwise.
[4]  Plaintiff has also not pled facts that would implicate either Executive Director Dillensnyder and Director Shaffer in the conspiracy.

constituted a violation of the conditions of his parole. If true, this would provide a reasonable officer with reasonable suspicion to find a parole violation against Plaintiff.

Reasonable suspicion fully precludes a malicious prosecution claim.[5] However, a retaliatory arrest claim may survive if Plaintiff alleges that similarly situated individuals in his position would not typically be arrested for his violation. See Nieves, 139 S.Ct. at 1727. He has not explicitly done so here. Therefore, both Count II and Count III must be dismissed without prejudice.

### C. Intentional Infliction of Emotional Distress under Pennsylvania law against All Defendants

Plaintiff alleges that Defendants intentionally inflicted emotional distress upon him. The elements of this state law claim are as follows:

(1) Extreme and outrageous conduct;

(2) The conduct was intentional or reckless;

(3) The conduct caused extreme emotional distress; and

(4) Plaintiff's distress is severe.

Doe v. Trustees of the Univ. of Penn., 270 F.Supp.3d 799, 826-27 (E.D.Pa 2017).

The threshold for finding behavior extreme and outrageous under Pennsylvania law is very high and is reserved for conduct "so extreme in nature as to go beyond all possible bounds

---

[5] To maintain a malicious prosecution claim, Plaintiff must also establish that the previous proceeding against him ended favorably. Heck v. Humphrey, 512 U.S. 477, 484 (1994). The exhibit Plaintiff provided to show a favorable termination does not show a dismissal of the parole violation charge. It only demonstrates that Plaintiff was released on bail. See Resp. Ex. A. Since Plaintiff has not established that this violation was dismissed, the malicious prosecution claim must also be dismissed on these grounds.

of decency such that it would be regarded as utterly intolerable to civilized society." Regan v. Twp. of L. Merion, 36 F.Supp.2d 245, 251 (E.D. Pa. 1999). But while the standard is high, several factors indicate that the behavior alleged here is a suitably egregious abuse of state power. Further, restriction of ability to call an attorney is deprivation of a fundamental right to redress. The Pennsylvania Supreme Court has also highlighted retaliatory motive as a "weighty factor" to consider when determining whether conduct is sufficiently egregious for an IIED charge. See Hoy, 720 A.2d at 754.[6]

Defendants argue that there is a physical harm requirement for an IIED claim, but this is no longer the case under Pennsylvania law.[7] Still, Plaintiff must show legitimate extreme emotional distress - more difficult when physical impact is absent. Id. at 123-24. But Plaintiff alleges observable harms resulted from the emotional distress – most tellingly, heart palpitations resulting from the stress. Third Am. Compl. ¶ 35 – 37. Multiple courts applying Pennsylvania law have held that heart palpitations and similar afflictions can demonstrate emotional distress.[8]

---

[6] Defendant Beck has pled the affirmative defense of immunity from Plaintiff's state law claim for IIED under the Political Subdivision Torts Claims Act. However, § 8550 strips liability where torts involve "actual malice or willful misconduct." See 42 Pa. Stat. and Cons. Stat. § 8550. Plaintiff has alleged conduct that could be considered willful or malicious. Defendant can assert the affirmative defense later if the record does not reflect that intent or malice, but the allegations here are sufficient to survive a motion to dismiss.

[7] Pennsylvania once adhered to "the impact rule" – which bars recovery in emotional distress cases unless accompanied by a physical injury or impact upon the complaining party. See Toney v. Chester Cnty. Hosp., 614 Pa. 98, 106 (2011). Since 1970, the state has gradually moved away from the rule, eventually concluding that "the physical impact requirement is a flawed tool" and "severe emotional distress can arise equally from situations without any physical impact." Id. at 123.

[8] See, e.g., Lane v. Cole, 88 F. Supp. 2d 402, 407 (E.D. Pa. 2000) (holding that plaintiffs' allegations of "fear, anxiety, stress, anger headaches, nightmares, humiliation, embarrassment, emotional distress [and] mental anguish" were sufficient to withstand motion to dismiss intentional infliction of emotional distress claim); see also Ginsburg v. Aria Health Physician Servs., Civil Action No. 12-1140, 2012 WL 3778110, at *9 (denying motion to dismiss intentional infliction of emotional distress claim where the plaintiff alleged loss of sleep, anxiety

The two cases cited by Defendants to argue otherwise are inapposite.  Klineburger addressed the recoverability of job-related stress under the Jones Act, whereas Outten addresses emotional distress under a federal statute.[9]

Thus, the Court will deny the motion with respect to Count IV against Defendants Beck, Kinch, and Doe.[10]  However, Plaintiff has not pled sufficient facts establishing that Director Shaffer or Executive Director Dillensnyder engaged in conduct that was extremely outrageous.  Few specific facts are pled tying these Defendants to the alleged wrongful conduct at all.  Thus, the Court will dismiss Count IV against Shaffer and Dillensnyder with prejudice.

**IV. CONCLUSION**

For the foregoing reasons, the Court will dismiss Counts I, II, and III without prejudice.  The Court will also dismiss Count IV against Defendants Dillensnyder and Shaffer with prejudice.  The Court denies Defendants' motions to dismiss as to Count IV against Defendants Beck, Kinch, and Doe.  Plaintiff may file one final amended complaint within fourteen (14) days.  An appropriate order follows.

---

and heart palpitations) (emphasis added); Ferrara v. Delaware Cty., Civil Action No. 18-CV-05157, 2019 WL 2568117, at *4 (E.D. Pa. June 21, 2019) (holding that the plaintiff's assertion that he suffered "anxiety, fear and mental harm" was sufficient to survive officer defendant's motion to dismiss).

[9] See Klineburger v. Maritrans 591 A.2d 314, 317 (Pa. Super. 1991); Outten v. National R.R. Passenger Corp., 928 F.2d 74 (3d Cir. 1991).

[10] The Court has dismissed all claims over which it has original jurisdiction.  Under 28 U.S.C § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction of a claim in such circumstances.  If Plaintiff does not file an amended complaint, the Court will consider whether to decline to exercise supplemental jurisdiction over the surviving state law claim.